[File No. 6542.]

OSCAR H. WILL & COMPANY, a Corporation, Respondent, v. STATE OF NORTH DAKOTA, a Public Corporation, and Ben C. Larkin et al., as the Board of Railroad Commissioners of the State of North Dakota, Appellants.

(281 N. W. 65.)

Opinion filed July 13, 1938.

*Chas. A. Verret,* for appellants.

*Dullam & Young,* for respondent.

Morris, J. The Board of Railroad Commissioners of the State of North Dakota demanded that the plaintiff apply for a license as a public warehouseman and comply with the rules and regulations pertaining to public warehouses adopted by the Board, and threatened to invoke the penalties of the Grain Warehouse Law in event the plaintiff failed to comply with these demands. The plaintiff, by this action, seeks to enjoin the Board from enforcing or attempting to enforce the Grain Warehouse Law, and the rules and regulations of the Board against the plaintiff upon the ground that it does not conduct a business as a public warehouseman. The only witness at the trial was the president of the plaintiff company who testified at length concerning the plaintiff's business and the methods by which it was conducted. The District Court found that the plaintiff ·is not a public warehouseman and is, therefore, not required to obtain a license as such and re-strained the defendants as prayed for in the complaint. The defendants appeal from the judgment of the District Court and ask a trial de novo.

The question determinative of this controversy is whether the plaintiff, Oscar H. Will & Company, operates a public warehouse as that term is defined by the statutes of this state. The legislature by chapter 155, N. D. Session Laws 1927, passed "An Act to Regulate Grain and Seed Warehouses;" which vested .in. the Board of Railroad Com-

missioners power to license and regulate public warehouses and imposed upon the Board certain duties with reference thereto including the duty to require public warehousemen to obtain a license to operate. Sections 3 and 7 of this Act describe the duties of the Board and define public warehouses as follows:

"Section 3. The Commission shall exercise general supervision of the public warehouses of this State, including the handling, weighing and storing of grain and seeds, and the management of public warehouses; it shall investigate all complaints of fraud and injustice, unfair practices and unfair discrimination, and shall make all proper rules and regulations for carrying out and enforcing any law in this State regarding the same.

"Section 7. All buildings, elevators and warehouses, and all grist and flour mills, cereal and feed mills and seed houses, doing a shipping business in this state, erected and operated, or which may hereafter be erected or operated by any person, association, copartnership or corporation, for the purpose of buying, selling, storing, shipping or handling grain and seeds for profit, are declared public warehouses and the person, association, copartnership or corporation owning or operating such buildings, elevators, mills or warehouses, which are now, or may be hereafter located or doing business within this State, whether such owners or operators reside within this State or not, are public warehousemen within the meaning of this section. Provided, that nothing in this act contained shall be construed to require any person or persons operating a flour, cereal or feed mill or seed house doing a manufacturing business only, to receive, store or purchase at said mill or seed house any kind of grain."

By chapter 137, N. D. Session Laws 1929, the legislature amended and re-enacted the two sections above quoted to read:

"Section 3. The commission shall exercise general supervision of the public warehouses of this state, including the handling, weighing and storing of grain, and the management of public warehouses; it shall investigate all complaints of fraud and injustice, unfair practices and unfair discrimination, and shall make all proper rules and regulations for carrying out and enforcing any law in this State regarding the same.

"Section 7. All buildings, elevators and warehouses, and all grist

and flour mills, cereal and feed mills doing a shipping business in this state, erected and operated, or which may hereafter be erected or operated, by any person, association, co-partnership or corporation, for the purpose of public buying, selling storing and shipping grain for profit, are declared public warehouses and the person, association, co-partnership or corporation owning or operating such buildings, elevators, mills or warehouses which are now or may be hereafter located or doing business within this state, whether such owners or operators reside within this state or not, are public warehousemen within the meaning of this section. Provided, that nothing in this act contained shall be construed to require any person or persons operating a flour, cereal or feed mill doing a manufacturing business only to receive, store or purchase at said mill any kind of grain."

A comparison between the enactments of 1927 and 1929 discloses that the words "seeds" and "seed houses" were omitted in the amendment. Thus, by the amendment, seed houses, as such, were eliminated from the operation of the act. Unless the business which they do is such as to warrant their regulation because the scope of the business extends beyond that ordinarily done by seed houses, the act does not now apply to them.

Another significant change made by the 1929 Act was the insertion of the word public as an adjective modifying the business activities sought to be regulated. The defendants contend that the evidence shows that the plaintiff is a public buyer of grain. That it is a buyer of grain remains undisputed. Whether the plaintiff is a public buyer is one of the chief points in controversy. The word public, as used in the amended statute, is an adjective which modifies and limits the word buying. Among the definitions of "public" found in Black's Law Dict. (3d ed.) are, "Open to all; common to all or many; general; open to common use."

It was not the intention of the legislature that all who buy grain for resale must be licensed. It is the public nature of the business which brings about regulation by the state through the Board of Railroad Commissioners as a protection to producers and shippers. A public buyer of grain, as contemplated by the statute, is one who holds himself out to the public as being willing and ready to purchase grain from the public generally. The term grain, as defined by § 25, chapter 155, N.

D. Session Laws, 1927, "is held to signify and include the following products: wheat, durum, oats, rye, barley, buckwheat, flaxseed, speltz and corn."

The plaintiff company operates a nursery and seed house. It raises plants, flowers, shrubs, seeds, and some feed for sale. It also buys plants, flowers, and seeds, for resale. Among its purchases in past years have been varied and limited quantities of grain described in the foregoing definition. It has, therefore, been a buyer of such grain. The Grain Warehouse Act does not, however, attempt to bring everyone who buys grain within the purview of the act. We must, therefore, examine into the nature and methods of the plaintiff's business in order to determine whether it has become a public warehouseman. The evidence discloses that the plaintiff secures 90 per cent of the seed corn necessary to its business by entering into contracts with growers. The plaintiff furnishes the seed corn, the grower plants it and cares for it. The plaintiff agrees to pay a stipulated price per bushel for the corn so grown, provided that it complies with certain stated specifications. Clearly these contracts do not indicate that the plaintiff is a public buyer of corn; on the other hand, it definitely establishes that the plaintiff buys most of its corn not from the public, but from a restricted and selected group of producers with whom it enters into specific contracts.

With respect to other grain the evidence shows that it is all bought for the purpose of being cleaned and prepared for sale and as seed or feed. The feed is mostly packaged and sold under registered brand names. The price paid for grains is not the general market price but that which is agreed upon between the seller and the plaintiff, although the market price enters into the negotiations. The plaintiff rejects about 90 per cent of the grain offered to it. It does not maintain scales of its own for use in the purchase of grain. All grain purchased is weighed upon the city scales. It does not store or ship grain for others, and does not hold itself out to the public as a buyer of grain generally. It posts no prices, and pays cash for all grain selected for purchase.

Section 24 of the 1927 Act as amended by chapter 4, N. D. Session Laws, 1933, prohibits discrimination in terms that signify its application to those who deal with the public generally and not those who

purchase grain in restricted quantities from selected producers or dealers. The section referred to provides:

"Section 24. No public warehouseman shall discriminate in the buying, selling, receiving and handling of grain or in the charges made or the service rendered to owners of stored grain, nor shall such warehouseman discriminate in the receiving of grain offered for sale or storage, nor in regard to the persons offering such grain for sale or storage nor between points or stations except as the marketing factors or transportation costs or grain quality premiums may warrant; provided, that no public warehouseman shall be required to receive for storage any grain which is heating or otherwise out of condition. Storing grain free of charge is hereby prohibited except as prescribed by law. Warehouseman shall post grain prices paid in a conspicuous place in the office or driveway of his place of business."

It is apparent that the Grain Warehouse Law does not fit the business of the plaintiff which cannot be made to comply therewith without completely changing its nature and the methods of operation. Plaintiff's business as now conducted does not even approximate that of a public warehouseman as contemplated and defined by the statutes of North Dakota.

Affirmed.

CHRISTIANSON, Ch. J., and BURR, NUESSLE and SATHRE, JJ., concur.